# United States Court of Federal Claims
No. 18-1215 C
Filed: August 30, 2018
Reissued: September 6, 2018[1]

| | |
|---|---|
| KPMG LLP, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant, | ) ) ) |
| and | ) ) ) |
| DELOITTE & TOUCHE LLP, | ) ) ) |
| Defendant-Intervenor. | ) ) |

*Daniel R. Forman*, Crowell & Moring LLP, Washington, D.C., attorney for plaintiff.

*William Porter Rayel*, United States Department of Justice, Civil Division, Washington, D.C., attorney for defendant.

*Keith R. Szeliga*, Sheppard Mullin Richter & Hampton LLP, Washington, D.C., attorney for defendant-intervenor.

**ORDER**

In this post-award bid protest, filed on August 14, 2018, plaintiff, KPMG, LLP ("KPMG"), challenges the United States Air Force's ("Agency" or "Air Force") decision to award Solicitation No. FA7014-17-R-5002 ("Solicitation" or "RFP") to defendant-intervenor, Deloitte & Touche LLP ("Deloitte"). *See* Complaint (hereinafter "Compl.") at 1. The Solicitation is for the Financial Improvement and Audit Readiness ("FIAR") Support contract, which is "intended to prepare the Air Force financial systems and financial statement for audit." *Id.* at 2.

---

[1] An unredacted version of this opinion was issued under seal on August 30, 2018. The parties were given an opportunity to propose redactions, but no such proposals were made. In a telephonic status conference held on September 5, 2018, the parties requested that the Court unseal its August 30, 2018 Order before the redaction deadline.

On April 17, 2018, KPMG received notice that its offer was unsuccessful, and that the Air Force had awarded the contract to Deloitte. *Id.* at 7. On April 19, 2018, KPMG submitted questions to the Contracting Officer ("CO") regarding the award, and the CO responded in writing. *Id.* at 8. Following this exchange, plaintiff filed a protest with the Government Accountability Office ("GAO") on April 27, 2018. *Id.* On May 29, 2018, the Air Force filed a Request for Dismissal, stating that it was taking corrective action by investigating potential conflicts of interest. *Id.* at 9. The GAO dismissed the protest on June 6, 2018, finding that the Agency's corrective action rendered the protest academic. *Id.* The Air Force later reaffirmed its original award of the contract to Deloitte and provided KPMG with a written debriefing on July 17, 2018. *Id.* KPMG submitted its second set of questions to the CO on July 19, 2018, and the Air Force responded the next day. *Id.* at 10-11. According to the Solicitation, the awardee was to begin performance on July 23, 2018. *See* Defendant's Appendix (hereinafter "D's App.") at 46. On August 14, 2018, KPMG filed its Complaint with this Court, alleging the following: (1) that the Air Force improperly awarded the FIAR contract to Deloitte; (2) the Air Force's ultimate determination that Deloitte did not have an Organizational Conflict of Interest ("OCI") was arbitrary, capricious, and contrary to procurement law; and (3) that the Air Force erroneously denied KPMG's Proposed OCI Mitigation Plan, thereby allowing Deloitte to benefit from KPMG's disparate treatment. *See generally* Compl. On August 17, 2018, plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction, asking this Court to enjoin the government from commencing performance pending the outcome of a decision on the merits. *See generally* Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (hereinafter "P's Mot.").

When making a determination on whether or not to grant a preliminary injunction, this Court typically evaluates the following four factors: (1) plaintiff's likelihood of success on the merits; (2) whether plaintiff will suffer irreparable harm absent an injunction; (3) the balance of harm to the respective parties if the injunction is either granted or denied; and (4) the public interest involved in granting or denying the injunction. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001). Notably, none of the four factors, taken individually, is dispositive, and a "weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427. Conversely, "the absence of . . . any one factor may be sufficient" to deny preliminary injunctive relief. *Id.* Ultimately, preliminary injunctive relief is an extraordinary and drastic remedy. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam). Nevertheless, the decision to award such relief is within the discretion of this Court. *See FMC Corp.*, 3 F.3d at 427. Additionally, "[w]hen injunctive relief is warranted, it will only be issued upon a showing by a preponderance of the admissible evidence." *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 287 (2006).

KPMG argues that it will succeed on the merits, as the Agency's erroneous determination that Deloitte did not have an OCI, combined with the Agency's rejection of KPMG's Proposed OCI Mitigation Plan, led to the Air Force's arbitrary, capricious, and contrary to law selection of Deloitte. P's Mot. at 17-18. Specifically, KPMG states that the DSD Laboratories Contract between the Air Force and Deloitte falls under the definition of a System Integrator ("SI") contract, which is a *per se* OCI. Plaintiff's Reply in Support of Plaintiff's Motion for Temporary

Restraining Order and Preliminary Injunction (hereinafter "P's Reply") at 6.  KPMG further alleges that it will suffer irreparable harm if its Motion were denied, as Deloitte will begin performance and gain first-hand knowledge of the Agency's requirements, affording it a competitive advantage over KPMG.  P's Mot. at 36.  KPMG also argues that it will suffer a loss in profits from work performed by Deloitte post-transition.  *Id.*  KPMG next contends that the balance of hardships weighs in favor of an injunction, as there is no indication that the Air Force will suffer harm if the preliminary injunction is granted.  *Id.* at 37-38.  Finally, KPMG asserts that the public interest will be served by granting its Motion for Preliminary Injunction, because a preliminary injunction would "preserve the integrity of the procurement process."  *Id.* at 39 (citing *PGBA LLC v. United States*, 57 Fed. Cl. 655, 663 (2003); *Overstreet Elec. Co. v. United States*, 47 Fed. Cl. 728, 744 (2000); *Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 242-43 (2010)).

To prevail on its Motion for Preliminary Injunction, KPMG must first establish that it is likely to succeed on the merits of its bid protest.  Fundamentally, this Court must analyze whether the decisions made by the Air Force were arbitrary, capricious, and not in accordance with procurement law.  It is a well-established principle that this Court affords great deference to agencies in procurement decisions.  *Overstreet Elec. Co. v. United States*, 59 Fed. Cl. 99, 117 (2003)); *see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013) (noting that agencies are afforded "broad discretion" in past performance evaluations).  This Court has found that agencies need only evaluate proposals in a manner that is "reasonable and consistent with the evaluation criteria and applicable statutes and regulations," and that the "merit of competing proposals is primarily a matter of agency discretion."  *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (internal quotation marks omitted); *accord* FAR 15.305(a) (providing that government agencies must "evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation").

Plaintiff contends that Deloitte's previous contracts create OCI issues, and, as a result, Deloitte should be disqualified from performing the contract.  *See* P's Mot. at 23, 27.  Additionally, plaintiff alleges disparate treatment, as KPMG was required to resubmit its proposal due to OCIs, which purportedly increased the cost and negatively impacted its relevant past performance.  *See id.* at 34-35.  The government disputes this narrow reading of the RFP, and argues that the Agency was neither arbitrary nor capricious in finding that Deloitte had no OCIs, or, alternatively, that waiver of any potential OCIs for Deloitte was reasonable.  *See* D's Resp. at 19, 28.  To support this argument, the government points to the CO's detailed 30-page report analyzing Deloitte's potential OCIs.  *See id.* at 28.  In this thirty-page report, the CO concluded that "Deloitte had no OCIs and, in any event, Deloitte's OCI mitigation plan was adequate to mitigate any potential OCIs that may arise from these contracts."  *Id.* at 2.  The government also asserts that KPMG suffered no disparate treatment, and plaintiff failed to demonstrate that the Air Force's denial of KPMG's OCI Mitigation Plan had a negative impact.  *See id.* at 33.  This Court agrees with the government's assessment and, as the Agency's determination was neither arbitrary, capricious, nor contrary to law, KPMG failed to show that it is likely to succeed on the merits of its claim.

In certain circumstances, a Court can replace the first prong of the preliminary injunction analysis to allow a movant greater lenience in pursuing a preliminary injunction.  The U.S. Court

of Appeals for the District of Columbia held that "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C. Cir. 1977).  While this Court does not dispute the legitimacy of substituting this standard for an analysis of the likelihood of success on the merits, the Court does not believe that such a substitution is applicable in the case at bar.

While plaintiff makes many persuasive arguments based on statutory construction, plaintiff fails to recognize the high level of deference afforded agency interpretation throughout the procurement process.  *See* 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A).  Although agencies may at times make bad judgments, the role of this Court is not to make or second guess the decisions of that agency.  The Court's role is to ensure that the award process was in accordance with the law, and that it was not based upon irrelevant factors, illegal practices, or in bad faith.  The Court's role is not to correct decisions, but to ensure those decisions are not arbitrary, capricious, or contrary to law.

The second factor involved in the preliminary injunction analysis looks to whether the plaintiff will suffer irreparable harm absent an injunction.  As a general principal, where plaintiff has no ability to recoup lost profits against the United States, the harm to the plaintiff is irreparable.  *See Heritage of America, LLC v. United States*, 77 Fed. Cl. 66, 78 (2007).  However, the analysis of lost profits is irrelevant in this case due to the government's assurances that, should KPMG succeed on the merits of its protest, the ensuing contract will still be for the full five-year period set forth in the Solicitation.  Moreover, the government has further indicated that only PricewaterhouseCoopers or Deloitte are qualified to perform the necessary bridge contract, should an injunction be issued.  As KPMG remains unable to perform the contract in the interim, and as KPMG, if it were to win on the merits and receive the contract, would perform the contract for the full five-year period specified in the Solicitation, no lost profits will result from denying the injunction.  Consequently, this Court finds no irreparable harm to the plaintiff if the preliminary injunction is denied.

The next step in a preliminary injunction analysis weighs the balance of harm to the respective parties if the request for preliminary injunction is either granted or denied.  Plaintiff argues that "it would be irreparably harmed because, absent such relief: (1) KPMG would be denied an opportunity to compete for the award even if its protest is sustained; and (2) Deloitte would obtain an unfair competitive advantage in any recompetition for the FIAR requirement."  P's Mot. at 37.  In its Response, defendant states that, if "KPMG ultimately succeeds on the merits of its protest, the Court may remand to the Air Force to re-evaluate the alleged OCIs or otherwise fix any errors identified by the Court."  D's Resp. at 34.  Additionally, defendant asserts that Deloitte will gain no competitive advantage over KPMG in the interim, as Deloitte's previously assigned cost, technical, and past performance evaluations would remain unchanged.  *See id.* at 34-35.  In comparison, a delay in the FIAR contract will be "'highly impactful' to the Air Force's audit readiness," and "the Air Force would likely be without FIAR support for at least 30 days," if the injunction were granted.  *Id.* at 36-37 (citing the Air Force's Deputy Assistant Secretary for Financial Operations).  Due to these concerns, this Court finds the balance of hardships to be weighed decidedly in favor of defendant.

Finally, the public interest favors denying plaintiff's Motion.  Plaintiff cites the public's interest in "honest, open, and fair competition in the procurement process" as the reason for granting the injunction.  P's Mot. at 39 (citing *NetStar-1 Gov't. Consulting, Inc. v. United States*, 98 Fed. Cl. 729, 735 (2011)) (internal citations omitted).  The government points to the importance of the audit and the harm involved in losing essential services for thirty days or more.  *See* D's Resp. at 36.  While the public interest in the integrity of the procurement process remains important, this Court finds that the public interest weighs in favor of denying the request for injunctive relief.

For the reasons set forth above, plaintiff's MOTION for Preliminary Injunction is **DENIED**.  On Wednesday, September 5, 2018, at 2:30 p.m., a telephonic status conference will be held in this case.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2] This opinion shall be unsealed, as issued, after September 14, 2018, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.